***********
Upon review of all of the competent evidence of record with reference to the errors assigned, and finding no good ground to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence reverses the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties in a pretrial agreement dated 1 February 2002 as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission, and are subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. An employment relationship existed between plaintiff and defendant-employer at all times relevant herein.
3. AIG Claims Services, Inc. is the carrier on the risk for workers' compensation purposes.
4. Plaintiff's average weekly wage is to be determined, if necessary, by a Form 22 wage chart.
5. The parties stipulated into evidence in this matter Stipulated Exhibits 1 and 2, which consist, respectively, of plaintiff's medical records and the Industrial Commission forms. In addition, plaintiff introduced and the Deputy Commissioner admitted plaintiff's Exhibits numbered 1 through 4 into evidence. Defendants introduced Exhibits numbered 1 through 7 which were admitted into evidence by the Deputy Commissioner.
 ***********
Based upon all the competent evidence of record, the Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing, plaintiff was a married forty-seven year old male born on September 7, 1954 with two children. Plaintiff had a history of laboring in industrial work, and plaintiff had worked for Metals USA Inc. as a truck loader since October 1995.
2. On October 1, 2000 plaintiff was climbing down from a truck after loading it with steel. He slipped and fell while coming down a ladder due to moisture on the bottom of his shoes and the slick nature of the ladder steps. The trucks plaintiff was required to load are kept outside and some are covered and some are not. As a result of slipping, plaintiff skinned his arms and fell on his hip as he attempted to catch himself. Immediately, after the fall, plaintiff felt some pain and discomfort in his legs, hips and foot.
3. Plaintiff mentioned this fall to his co-worker, Corey Simmons Wiseman who was the punch press operator that evening. Mrs. Wiseman testified at the hearing that plaintiff told her that he fell off the ladder and showed her the scrapes on his arm.
4. Mr. Michael Wiseman, a co-worker, testified that during a shift change on or about October 1, 2000 the plaintiff told him that he had fallen down a ladder and he asked plaintiff if he had reported the injury to Larry Mallot. The plaintiff indicated to Mr. Wiseman that he had told Mr. Mallot. Mr. Wiseman verified that employees were instructed to report an injury to whoever is in charge.
5. Even though plaintiff did not believe his injury was serious, he reported this incident to Larry Mallot, the lead man on the third shift and showed him the abrasions on his arm because he thought he was supposed to tell someone in case it became serious. Plaintiff testified that at the time he reported the injury to Mr. Mallot, his arms were hurting and he felt like he had bruised his hip.
6. Larry Mallot, lead man on the third shift, testified that the plaintiff told him he had slipped and fallen. Mr. Mallot further testified that he remembered this conversation occurring on or about October 1, 2000.
7. Mr. Mallot testified that he is supposed to report an injury to the supervisor if an incident is reported to him. Mr. Mallot did not complete an injury report for the skinned abrasions on the plaintiff's arms because the plaintiff did not indicate that he was seriously injured.
8. Plaintiff did not seek medical treatment immediately following the injury. He continued to perform his regular job; however, he continued to notice an increase of pain and discomfort in his hip, leg and foot. He thought that the problems he was having were related to years of walking on the cement floors. By mid-January 2001, plaintiff's hip, leg and foot pain had gotten progressively worse and he began to experience back pain.
9. On January 18, 2001, plaintiff did seek medical treatment at White Oak Family Physicians from Dr. Robert B. Scott, complaining of severe back pain. By that date, plaintiff could hardly walk and his left foot was going numb. Plaintiff could not recall a specific injury. Dr. Scott diagnosed plaintiff with substantial sciatica and noted that a disc herniation was suspected. Plaintiff was taken out of work for two weeks. During this visit, plaintiff was made aware for the first time that he might have a herniated disk which was the cause of his hip, leg and foot pain.
10. On or about January 22, 2001, plaintiff contacted the defendant-employer regarding his back injury and out-of-work status. Plaintiff was referred to Scott Stafford, Regional Human Resources Manager for Metals USA, Inc., and Mr. Stafford offered plaintiff some information regarding short-term disability benefits. Mr. Stafford did not fill out an accident report at that time. Ultimately, plaintiff did not receive short-term disability benefits due to the work-related nature of his complaints.
11. Mr. Stafford testified that if an injury had been reported to a lead man, the lead man was to go to the supervisor with that information; however, there is no evidence in the record to suggest that this was done.
12. On January 29, 2001, plaintiff returned to White Oak Family Physicians for follow-up of his back pain. Plaintiff stated that he was doing better and was no longer having pain during rest; however, he did hurt after periods of activity. Plaintiff also stated that the drive to the doctor's office had caused a slight flare up in pain. Dr. Scott continued plaintiff out of work and prescribed Decadron.
13. Following his conversation with plaintiff, Scott Stafford made some inquiries to plaintiff's supervisor and others regarding plaintiff's injury. Mr. Stafford also reported the injury to defendant-carrier.
14. Plaintiff was referred to Randleman Medical Center by the defendant-employer, and was seen there on January 30, 2001 for his back pain. Plaintiff reported that he had fallen off of a ladder and that the pain had really started bothering him about two weeks prior. Plaintiff was given Celebrex 200 mg.
15. On February 1, 2001, plaintiff returned to Randleman Medical Center for a follow-up of his back pain. An MRI was requested of plaintiff's lumbar spine.
16. On February 7, 2001, plaintiff had an MRI at Southeastern Radiology, which showed that he had degenerative disc disease at L4-L5 and L5-S1. The MRI also showed a dominant finding of a large leftward disc protrusion/extrusion with moderate to marked neural encroachment.
17. On February 22, 2001, plaintiff returned to Randleman Medical Center for a follow-up of his back pain. Plaintiff stated that his back was still painful. Plaintiff was referred to Dr. Henry Poole at Microneurosurgical Specialist of Central Carolina.
18. On or about March 7, 2001, plaintiff filed a Form 18 upon which he notified the defendant-employer in writing of the back injury that he sustained on October 1, 2000. Defendants already had actual notice of the October 1, 2000 incident.
19. On March 13, 2001, Dr. Randy O. Kritzer treated plaintiff at Microneurosurgical Specialist of Central Carolina. Plaintiff was being evaluated for left buttock, hip and leg pain with numbness and tingling. Plaintiff stated that he fell off a ladder at work. Dr. Kritzer noted that plaintiff reflexes were absent at the knees, 2+ at the right ankle, and absent at the left ankle. Dr. Kritzer also noted that plaintiff had decreased sensation in the lateral aspect of the left foot. Dr. Kritzer reviewed the MRI scan, which showed a very large disk herniation at L5-S1 on the left. Dr. Kritzer prescribed Ansaid and scheduled plaintiff for surgery later in the month if he did not improve.
20. On March 29, 2001, plaintiff returned to Dr. Kritzer. It was noted that plaintiff had not improved. Dr. Kritzer and plaintiff elected to proceed with surgery as scheduled for a lumbar microdiskectomy.
21. On April 6, 2001, plaintiff underwent a lumbar microdiskectomy by Dr. Randy O. Kritzer and Dr. Henry Pool.
22. On May 9, 2001, plaintiff was seen at Microneurosurgical Specialist by Dr. Randy Kritzer three weeks status post lumbar microdiskectomy. Dr. Kritzer noted that plaintiff was doing well and that most of his pre-operative pain had resolved. Plaintiff stated that he was walking a few miles daily without difficulty. Dr. Kritzer was of the opinion that he would see plaintiff back in three weeks, and hopefully release him to return to work at that time.
23. On June 6, 2001, Dr. Kritzer saw plaintiff now six weeks status post lumbar discectomy. Plaintiff was complaining that things were worsening once again. Dr. Kritzer recommended an MRI scan with gadolinium.
24. On June 7, 2001, plaintiff returned to Dr. Kritzer to follow-up the lumbar scanning with gadolinium. Dr. Kritzer stated that this showed excellent disk removal and no evidence of neural compression. Dr. Kritzer recommended two epidural steroid shots.
25. On July 25, 2001, plaintiff returned to Dr. Kritzer after receiving two epidural steroid shots, which gave him no relief. Dr. Kritzer recommended Elavil and planned to see plaintiff back in a month.
26. On August 27, 2001, plaintiff returned to Dr. Kritzer without receiving much relief after taking Elavil. Dr. Kritzer stated that he would return plaintiff to work in approximately ten days with some lifting limitations and that he would see him in the future on an as needed basis. Plaintiff presented for work but defendant-employer advised him that his employment was terminated. Plaintiff was not sure he could have worked if defendant-employer offered him a job, but he was willing to try.
27. On December 13, 2001, plaintiff presented to Johnson Neurological Clinic through a referral from Dr. Scott to be evaluated by Dr. Victor T. Freund. Plaintiff stated that he did well for roughly one month following the surgery and then had a recurrence of symptoms. Plaintiff also stated that his leg pain had progressively worsened despite having a repeat MRI scan in June which showed no recurrent disc herniation. Also, there was a lot of epidural scarring. After reviewing the MRI scans, previous medical history and giving plaintiff a physical examination, Dr. Freund was of the opinion that he could see no need for further neurosurgical intervention. He opined that plaintiff's symptoms are not indicative of those that improve with lumbar fusion; therefore, the best option for improvement, or living with the symptoms would be treatment through a chronic pain clinic. Plaintiff has not been financially able to pay for treatment at a pain clinic.
28. On October 1, 2000, plaintiff sustained a compensable injury by accident when he slipped and fell down a ladder causing injury to his arm, hip, back and legs. Plaintiff's testimony on how his workplace injury by accident occurred, that he gave notice to a supervisor and the progression of his symptoms related to the injury is accepted as credible.
29. Although plaintiff did not mention the exact mechanism of his injury to his family doctor, Dr. Scott, at the initial treatment for his back, he did later discuss with his doctors, including Dr. Stuart Kossover at Randleman Medical Center, Dr. Kuzma and Dr. Kritzer, the slip and fall incident of October 1, 2000.
30. Dr. Kritzer was of the opinion that a left-sided disk herniation would produce pain on the left which would tend to go down to the outside of the leg towards the side of the foot. When asked whether plaintiff's fall caused the disk herniation, Dr. Kritzer was of the opinion that if plaintiff was asymptomatic before he fell off the ladder and then developed symptoms after the fall, then he [Kritzer] would certainly believe that falling off the ladder was the cause of his difficulty. Based on the greater weight of the evidence, the Full Commission finds that plaintiff began to complain of left-sided hip, leg and foot pain immediately after his fall off the ladder; these symptoms became progressively worse over the next 2 ½ months until plaintiff's foot was so numb and painful he could hardly walk; these symptoms did not exist prior to the fall and plaintiff's disk herniation was on the left.
31. Based on the greater weight of the evidence, the Full Commission further finds that plaintiff's large disk herniation at L5-S1 on the left was causally related to his October 1, 2000 fall from the ladder. The surgery performed by Dr. Kritzer was reasonably required to effect a cure, provide relief or lessen plaintiff's disability.
32. As a result of his compensable injury by accident, plaintiff was totally disabled from work during the period from January 18, 2001 through the date of hearing before the deputy commissioner and continuing and required surgery. Plaintiff has provided competent medical evidence that his period of disability is related to his October 1, 2000 injury by accident.
33. On August 27, 2001, Dr. Kritzer indicated that plaintiff had reached maximum medical improvement and that he would assign plaintiff an 11% permanent partial disability rating to his back. Plaintiff, however, still experienced progressively worsening leg pain and he was in need of treatment by a pain clinic.
34. Plaintiff is entitled to have the defendant-employer reimburse him for all reasonable medical expenses incurred as a result of the compensable injury by accident, including travel to his medical provider.
35. Defendants contend that the plaintiff did not report an injury by accident and they did not have actual or written notice of plaintiff's injury until January of 2001 and were prejudiced by plaintiff's failure to give timely notice. The greater weight of the evidence, however, supports a finding that plaintiff reported his slip and fall to the supervisor or lead worker, Larry Mallot, on the date of the incident. Therefore, the oral notice of the accident that plaintiff gave to defendant-employer was timely and reasonable. Also as soon as the plaintiff learned of the seriousness of his leg, hip and back pain, he reported this information immediately to defendant-employer. Defendants were not prejudiced by the manner in which plaintiff gave notice of his accident.
36. Plaintiff's testimony concerning his injury by accident and the resulting development of increasingly severe symptoms causing him to seek medical treatment is accepted as credible.
37. Following his release to return to work with restrictions and the termination of his employment, plaintiff sought work at Lowes Hardware, Food Lion, through the Employment Security Commission office and various other places. Plaintiff has not been able to find employment. Plaintiff has made reasonable efforts to find suitable employment and would benefit from vocational rehabilitation assistance from defendants.
38. Based on the Form 22 wage chart, plaintiff's average weekly wage is $697.56 which yields a compensation rate of $465.06.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff suffered a compensable injury by accident arising out of and in the course and scope of his employment on October 1, 2000 when he fell from a ladder and injured his back, hip, leg and arm. Plaintiff's L5-S1 disk herniation, which required surgery, is causally related to his fall. Plaintiff is entitled to benefits under the North Carolina Workers' Compensation Act for his compensable injury. N.C. Gen. Stat. § 97-2(6).
2. Defendants had actual notice of plaintiff's October 1, 2000 injury by accident, and have failed to establish that they have been prejudiced by any lack of written notice within 30 days of the accident of October 1, 2000. N.C. Gen. Stat. § 97-22.
3. Plaintiff has the burden of proving disability and the extent of any disability. An employee may meet this burden by showing: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but after a reasonable effort, has been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Russell v. Lowes Prod.Distribution, 108 N.C. App. 762, 765, 425 S.E.2d 454, 457 (1993). As a result of his injury, plaintiff has been given work restrictions and his chronic pain further limits his ability to work. Although he is capable of some work, after a reasonable effort, plaintiff has been unsuccessful in his efforts to find suitable employment. Therefore, plaintiff has proven by the greater weight of the evidence that his incapacity resulting from his injury by accident prevented him from earning his pre-injury wages in the same or any other employment. As a result of his compensable injury on October 1, 2000, plaintiff is entitled to temporary total disability for the period January 18, 2001 to the present and ongoing until further Order of the Commission at his compensation rate of $465.04 per week. N.C. Gen. Stat. § 97-29.
4. Although Dr. Kritzer is of the opinion that plaintiff reached maximum medical improvement on August 27, 2001, plaintiff remained totally disabled. Plaintiff is incapable of returning to his pre-injury job; he continues to need treatment at a pain clinic for his chronic leg pain; and he has work restrictions that would limit his employment options. Although plaintiff is capable of some work, he made reasonable, but unsuccessful, efforts to find suitable employment. Plaintiff is in need of vocational rehabilitation assistance provided by defendants to lessen his disability.
5. Plaintiff is entitled to have defendants provide all reasonably related medical treatment which tend to effect a cure, give relief, or lessen the period of disability, including but not limited to treatment at a chronic pain clinic, and transportation to medical providers. N.C. Gen. Stat. §§ 97-19, 97-25, 97-2(19).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following
 AWARD
1. Defendants shall pay temporary total disability benefits to plaintiff at the compensation rate of $465.06 per week from January 18, 2001 to the present and ongoing for necessary weeks until further order of the commission. That compensation which has accrued shall be paid to plaintiff in a lump sum subject to attorney's fee hereinafter approved.
2. A reasonable attorney's fee of twenty-five percent of the accrued compensation awarded to plaintiff in paragraph 1 above is hereby approved to be deducted from sums due plaintiff and shall be paid directly to plaintiff's counsel. Thereafter, every fourth check shall be deducted and paid directly to plaintiff's counsel.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of this injury by accident and resulting disability, including transportation costs, treatment at a pain clinic and vocational rehabilitation assistance.
4. Defendants shall pay the costs due this Commission.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_______________ LAURA K. MAVRETIC COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
BSB:md